UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JANE DOE, a minor; R.C., on his own behalf and as a
natural parent on behalf of JANE DOE, a minor; and E.D.,
on her own behalf and as a natural parent on behalf of
JANE DOE, a minor,

                                    Plaintiffs,

- against -

THE U.S. SECRETARY OF TRANSPORTATION, THE
U.S. DEPARTMENT OF TRANSPORTATION, THE
U.S. ATTORNEY GENERAL, THE U.S.
DEPARTMENT OF JUSTICE, NEW YORK STATE
ATTORNEY GENERAL, THE STATE OF NEW YORK,
and KATONAH-LEWISBORO SCHOOL DISTRICT,

                                    Defendants.
------------------------------------------------------------------------X

**OPINION AND ORDER**

17-CV-7868 (CS)

<u>Appearances</u>:
Robert Cisneros
Eva Doukakis
South Salem, New York
*Counsel for Plaintiffs*

Steven J. Kochevar
Assistant United States Attorney
Southern District of New York
New York, New York
*Counsel for Federal Defendants*

Steven L. Banks
Assistant Attorney General
State of New York
New York, New York
*Counsel for State Defendants*

Lewis R. Silverman
Caroline B. Lineen
Silverman & Associates
White Plains, New York
*Counsel for Defendant Katonah-Lewisboro Union Free School District*

1

<u>Seibel, J.</u>

Before the Court is the motion to dismiss of the U.S. Attorney General, the U.S. Department of Justice, the U.S. Department of Transportation, and the U.S. Secretary of Transportation (collectively, "the Federal Defendants"), (Doc. 55); the motion to dismiss of the New York State Attorney General and the State of New York (collectively, "the State Defendants"), (Doc. 59); and the motion to dismiss of the Katonah-Lewisboro School District ("KLSD"), (Doc. 66).

## I.    BACKGROUND

I accept as true the facts, but not the conclusions, set forth in Plaintiff's First Amended Complaint ("FAC").  (Doc. 49.)

### A.    Facts

Plaintiffs are Jane Doe, a minor child, and her parents R.C. and E.D., who bring this action on their own behalf and on behalf of Jane.  (FAC at 1.)  Jane has a disability because she has chronic asthma and food and environmental allergies, including an allergy to dogs.  (*Id.* ¶ 12.)  Jane suffers allergy symptoms and her asthma is triggered when she contacts dogs, dog dander, or protein emitted by dogs.  (*Id.* ¶¶ 12-13.)  Her symptoms upon contact with dogs include "asthma attacks, difficulty breathing, wheezing, hives, rashes, excessively runny and/or clogged nose, watering eyes, coughing, sneezing, nose bleeds, difficulty concentrating, difficulty performing the functions of daily living and difficulty interacting with others, among other symptoms."  (*Id.* ¶ 13.)  Dog dander and proteins emitted by dogs may remain in an indoor space after the dog is removed, and they do not necessarily lose their toxicity toward people with allergies and asthma over time.  (*Id.* ¶¶ 16-18.)

1.      Jane's School

In September 2014, Jane entered sixth grade at the KLSD middle school, and thereafter began experiencing more asthma and allergy symptoms than she used to experience, requiring R.C. and E.D. to administer more medicine to Jane than usual.  (*Id.* ¶¶ 23-24.)  Presumably attributing Jane's symptoms to the presence of dogs at her school, Plaintiffs repeatedly asked KLSD to exclude dogs from school property, but KLSD refused and explained, in part, that it was bound by federal and state laws that required it to allow dogs at the school.  (*See id.* ¶¶ 20-21.)

In mid-November, 2014, despite objections from R.C. and E.D., KLSD invited a parent, who uses a service dog and is the CEO of an organization that trains and promotes the use of service dogs, to come to Jane's school and give a lecture to the sixth grade students.  (*Id.* ¶ 26.)  R.C. and E.D. provided KLSD with a letter from Jane's physician explaining that the dog should not be allowed in Jane's school, and initially KLSD planned to prohibit the dog from entering, but changed its mind after speaking with the parent who was to present.  (*Id.* ¶¶ 27-29.)  On November 25, 2014, the service dog came to the school for the presentation.  (*Id.* ¶ 30.)  Jane was in school that day and suffered asthma and allergy symptoms, although Plaintiffs do not allege that Jane attended the presentation.  (*Id.* ¶¶ 30-31.)

Beginning in January 2015, Plaintiffs requested from KLSD a plan to accommodate Jane's disability pursuant to § 504 of the Rehabilitation Act, *see* 29 U.S.C. § 701 *et seq.*, and on January 22, 2015, KLSD found that Jane is a student with a disability pursuant to the Act and developed a § 504 accommodation plan for her.  (*Id.* ¶¶ 15, 32.)  Plaintiffs allege that the plan required KLSD to prevent contact between Jane and service dogs, employ a cleaning protocol anywhere a service dog had been, and notify Plaintiffs of known or expected visits to school by a

service dog.  (*Id.* ¶¶ 25, 32.)  Plaintiffs asked for additional, unspecified accommodations, but KLSD refused to make any additional accommodations.  (*Id.* ¶ 32.)

On February 23, 2015, Jane was required as part of her orchestra class to perform a concert.  (*Id.* ¶ 35.)  Over Plaintiffs' objections, the same parent who had previously brought a service dog into the school attended the concert.  (*Id.* ¶ 36.)  Plaintiffs do not allege how close the dog came to Jane, but she suffered asthma and allergy symptoms.  (*See id.* ¶ 39.)

On May 15, 2015, KLSD held a fundraiser for a service dog organization, and a service dog was brought to the fundraiser.  (*Id.* ¶¶ 40, 43.)  Plaintiffs allege that KLSD did not notify them of the event until a week before, when they had already heard about it, but do not allege that Jane was present.  (*Id.* ¶¶ 40-44.)  On June 1, 2015, Jane was part of another orchestra concert. (*Id.* ¶ 46.)  Pursuant to the § 504 plan, Jane was seated in the corner of the auditorium, closest to the basement exit, and was escorted out of the auditorium immediately after the concert ended.  (*Id.*)  She was not able to mingle in the lobby after the concert.  (*Id.*)  In the spring of 2015, Jane selected orchestra as her music class for the following year, but Plaintiffs withdrew Jane from that class before it began because of their concerns that KLSD would fail to adequately protect Jane.  (*Id.* ¶¶ 48-49.)  On September 3, 2015, KLSD personnel instructed Jane to sit in the auditorium near where the service dog had been in June 2015, and she suffered asthma and allergy symptoms the following day.  (*Id.* ¶¶ 50-52.)

In November 2015, Plaintiffs learned that Jane's class was going on a field trip to a nursing home that dogs regularly inhabited.  (*Id.* ¶¶ 58-59.)  KLSD proposed to keep the students in an area where dogs were not allowed and have Jane enter and exit through a different entrance than the other students, (*id.* ¶ 61), but Plaintiffs disputed the adequacy of the plan, having been told by the nursing home that dogs were allowed in all parts of the facility, (*id.* ¶¶ 59, 62).

Plaintiffs decided Jane would not go on the field trip, and instead she was required to write an essay. (*Id.* ¶¶ 64-65.) On December 9, 2015, one of Jane's teachers would not allow her to eat a snack because of Jane's food allergies, despite Jane's insistence that she was not allergic to any of the ingredients. (*Id.* ¶¶ 53-56.)

On December 18, 2015, KLSD instituted a revised § 504 plan, with no special accommodation for field trips, and removed the requirement that Plaintiffs receive notice as soon as practicable of the presence of a service dog at Jane's school. (*Id.* ¶ 63.) On May 25, 2016, a service dog was allowed into the middle school, and thereafter Jane suffered asthma and allergy symptoms, although Plaintiffs do not allege that Jane saw or was exposed to the dog. (*Id.* ¶ 66.)

On November 11, 2016, after Plaintiffs filed a complaint, Impartial Hearing Officer Nancy Lederman found KLSD to be in violation of § 504 of the Rehabilitation Act. (*See id.* ¶ 67.)[1] Lederman ordered KLSD to develop and implement a concrete plan as to how visitors accompanied by dogs would be kept away from Jane, with a priority that, to the extent possible, Jane not be singled out or her education disrupted. (*Id.* ¶67.)[2] On December 12, 2016, KLSD

---

[1] Plaintiffs allege that this was their second challenge to KLSD's § 504 plan for Jane. (*See id.* ¶ 86.) The first challenge was made on an unspecified date, and after an "impartial hearing review" of Plaintiffs' complaint, a decision dated October 3, 2015 was released. (*Id.* ¶ 85.) Plaintiffs do not explain what they complained of or what this decision held. Presumably the decision was not in their favor, because they state that they appealed the decision to the KLSD Board of Education and that the appeal was denied. (*Id.*)

[2] In her decision, which I may consider because Plaintiffs rely heavily upon its terms and effect in the FAC, *see Artists Rights Enf't Corp. v. Estate of King*, 224 F. Supp. 3d 231, 235 n.1 (S.D.N.Y. 2016), Lederman rejected Plaintiffs' arguments that KLSD had to ban all dogs, provide advance notice of dog visits, keep a written log of such visits, and sponsor field trips only to places with no dogs, but found that KLSD had to develop a realistic and specific plan as to how visitors with service dogs would be kept away from Jane. (Doc. 67 Ex. H.) At this stage, however, I consider Lederman's decision only for the fact of what was said, but not for the truth of its contents. *See, e.g., Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991),

instituted a new § 504 plan that required, among other things, that any service dog within 30 feet of Jane had to be moved. (*Id.* ¶ 75.)

Plaintiffs allege that KLSD did not comply with Lederman's orders or the revised plan on two occasions. First, on June 21, 2017, at Jane's middle school graduation ceremony, Jane "came upon a service dog" outside of the school in an area where students were gathered to take pictures and congratulate each other. (*Id.* ¶¶ 71-72.) She had to remain vigilant throughout the event to avoid the dog. (*Id.* ¶ 72.) Second, on January 30, 2018, Jane performed at a concert as part of her orchestra class, and she was seated at the front of the stage for the first half of the show, within thirty feet of a dog. (*Id.* ¶¶ 73-74, 77.) She thereafter suffered asthma and allergy symptoms. (*Id.* ¶ 78.)

Plaintiffs allege that the school doctor was hostile to their positions at the § 504 meetings, (*see id.* ¶¶ 88-92), and that the middle school assistant principal, in what she said was a joke to the principal, made a comment ridiculing Jane's condition, (*id.* ¶¶ 33-34). The same assistant principal was the administrator on duty at the February 23, 2015 orchestra concert and the May 15, 2015 fundraiser, and did not maintain awareness of the service dogs' location. (*Id.* ¶¶ 38, 44.)[3]

### 2. Airports and Airplanes

In 2014 and 2015, Plaintiffs took three interstate trips to visit relatives. (*Id.* ¶ 93.) At airports in New York, California, New Jersey, and New Mexico, Plaintiffs saw dogs, (*id.* ¶ 95), and service dogs were on four of their six flights, (*id.* ¶ 96). While at airports and on flights, Jane suffered asthma and allergy symptoms. (*Id.* ¶ 94.) No procedure was available to Plaintiffs

---

[3] Paragraph 44 of the FAC uses the word "concert," but the Court understands that paragraph to reference the May 15, 2015 fundraiser.

to request that dogs not be allowed near Jane, and airline personnel told Plaintiffs that service dogs could not be prohibited from planes due to federal regulations. (*Id.* ¶¶ 98-101.) "Plaintiffs have been forced to forgo taking interstate trips by air because of the danger to Jane's health posed by the presence of dogs in airports and on airplanes." (*Id.* ¶ 102.)

### 3. Public and Commercial Spaces

On three occasions, Plaintiffs stayed at hotels that "do[] not allow pets." (*Id.* ¶¶ 103, 107.) Other hotel guests, however, were permitted to bring service dogs into the hotels, and the hotels claimed that the dogs could not be excluded "because of the rules regarding service dogs." (*Id.*)

On three occasions, Plaintiffs went to malls or grocery stores where individuals had service dogs, and Plaintiffs had to leave to protect Jane. (*Id.* ¶¶ 104-106.) On July 25, 2017, Plaintiff was exposed to a service dog at summer camp, and suffered asthma and allergy symptoms. (*Id.* ¶ 108.) Plaintiffs allege they have encountered service dogs on many other, unspecified occasions between 2015 and filing the instant action. (*Id.* ¶ 109.) Plaintiffs add that they "did not encounter dogs in Jane's school, on aircraft or in airport facilities, or in places of public accommodation or commercial facilities prior to the passage of the statutes and regulations cited [in the FAC] which mandate that dogs be allowed in such places." (*Id.* ¶ 110.) Plaintiffs further allege that they have been:

> forced to refrain from and limit their out-of-state travel, and have curtailed patronizing Jane's school, commercial facilities and places of public accommodation, for the sole reason that the statutes and regulations put in place by the state and federal governmental defendants, and their policies, practices and procedures, discriminate against and harm Jane.

(*Id.* ¶ 113.)

4.        Challenged Regulations and Statutes

Plaintiffs challenge the following federal regulations:  (1) 14 C.F.R. § 382.117, promulgated by the Department of Transportation pursuant to the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, which requires air carriers to permit service animals to accompany passengers with disabilities; (2) 28 C.F.R. § 35.136, promulgated by the U.S Attorney General pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, which requires public entities to accommodate service animals; and (3) 28 C.F.R. § 36.302, promulgated by the U.S. Attorney General pursuant to Title III of the ADA, which requires places of public accommodation to accommodate service animals (collectively, "the Federal regulations").  Plaintiffs challenge the following three New York State laws:  (1) N.Y. Executive Law § 296.14, making it unlawful to deny access or otherwise discriminate against a person with a disability because he or she is accompanied by a trained service dog; (2) N.Y. Civil Rights Law § 47-b, which prohibits persons from imposing charges on individuals who are accompanied by service dogs, and (3) N.Y. Penal Law § 242.05, which criminalizes interference with or harassment or intimidation of a service animal (collectively, "the State laws").

**B.        Procedural History**

The FAC uses numbered sections to delineate the different grounds upon which Plaintiffs seek relief, but each section contains numerous, non-numbered causes of action.  The Court understands the FAC to bring the following claims:  (1) violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 500, *et seq.*, against the Federal Defendants; (2) violation of the Due Process Clause of the U.S. Constitution against the Federal Defendants; (3) violation of the Due Process Clause of the U.S. Constitution against the State Defendants; (4) violation of the Equal Protection Clause of the U.S. Constitution against the Federal Defendants; (5) violation of the Equal Protection Clause of the U.S. Constitution against the State Defendants; (6) violation

of the Equal Protection Clause of the U.S. Constitution against KLSD; (7) violation of the non-discrimination mandate of the ACAA against the U.S. Secretary of Transportation and Department of Transportation; (8) violation of the Rehabilitation Act against the Federal Defendants; (9) violation of the Rehabilitation Act against the State Defendants; (10) violation of the Rehabilitation Act against KLSD; (11) violation of the ADA against KLSD; and (12) violation of the ADA against the N.Y. State Attorney General.

On April 27, 2018, the Federal Defendants filed a motion to dismiss, (Doc. 55), and a memorandum of law in support of that motion, (Doc. 56 ("Fed. Ds.' Mem.")); on May 11, 2018, the State Defendants filed a motion to dismiss, (Doc. 59), and a memorandum in support of that motion, (Doc. 60 ("State Ds.' Mem.")); and on June 13, 2018, KLSD filed a motion to dismiss, (Doc. 66), and a memorandum in support of that motion, (Doc. 68 ("KLSD Mem.")).  On June 8, 2018, Plaintiffs filed opposition to the Federal Defendants' and State Defendants' motions (Docs. 61 ("Opp. to Fed. Ds"), 62 ("Opp. to State Ds")), and on July 11, 2018, Plaintiffs filed an opposition to KLSD's motion, (Doc. 75 ("Opp. to KLSD")).  On June 26, 2018, the Federal Defendants, the State Defendants, and KLSD each filed a reply brief.  (Docs. 74, 71, 72 ("KLSD Reply").)

## II.    LEGAL STANDARDS

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).[4]

Under Rule 12(b)(1), a district court may properly dismiss an action for lack of subject matter jurisdiction "if the if the court 'lacks the statutory or constitutional power to adjudicate

---

[4] Plaintiffs R.C. and E.D. are representing themselves and their daughter in this litigation. Ordinarily complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (emphasis and internal quotation marks omitted), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted). But here Plaintiffs R.C. and E.D. are lawyers, and thus "the liberal construction courts generally give the pleadings of a *pro se* litigant does not apply." *Levy v. Welsh*, No. 12-CV-2056, 2013 WL 1149152, at *3 (E.D.N.Y. Mar. 19, 2013) (citing *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010)) (collecting cases).

it.'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A challenge to a plaintiff's constitutional standing to sue amounts to a challenge to the court's subject matter jurisdiction. *Am. Tissue Inc. v. Arthur Andersen, LLP*, 275 F. Supp. 2d 398, 403 (S.D.N.Y. 2003). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. In determining whether subject matter jurisdiction exists, the district court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (footnote and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). The Court may also "rely on evidence outside the complaint" when deciding a Rule 12(b)(1) motion. *Cortlandt St. Recovery Corp.*, 790 F.3d at 417.

## III. DISCUSSION

### A. Abandoned Claims

The Federal Defendants argue that Plaintiffs do not have standing to challenge the enforcement or promulgation of 14 C.F.R. § 382.117 because the ACAA does not provide a private right of action, (Fed. Ds.' Mem. at 15), and because 49 U.S.C. § 46110(a) requires that any challenge to an order of the Secretary of Transportation be brought in the U.S. Court of Appeals for the D.C. Circuit or the circuit court where Plaintiffs reside, (*id.* at 10-11). They further contend that even if Plaintiffs had standing, the claims would be time-barred, (*id.* at 14), and this Court could review only whether the challenged regulations are constitutional, not whether the Federal Defendants must cease enforcement, because the latter would require

affirmative action that is barred by the doctrine of sovereign immunity, (*id.* at 9-10).

Additionally, the State Defendants argue that Plaintiffs' constitutional claims against the State of

New York must be dismissed under the Eleventh Amendment.  (State Ds.' Mem. 11-12.)

Finally, KLSD argues that Plaintiffs R.C. and E.D. do not have standing to bring constitutional

claims on their own behalf because § 1983 does not allow parents to bring a derivative claim

based on the alleged violation of their child's rights.  (KLSD Mem. at 17-18.)  Plaintiffs do not

respond to any of the aforementioned assertions.

A federal court may deem a claim abandoned when a party moves to dismiss it and the

opposing party fails to address the argument in any way.  *Div. 1181 Amalgamated Transit Union

v. R&C Transit, Inc.*, No. 16-CV-2481, 2018 WL 794572, at *4 (E.D.N.Y. Feb. 7, 2018)

(collecting cases); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara LLC*, No. 08-CV-442,

2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014).  Because Plaintiffs did not address the

above-described arguments, I "properly infer that plaintiffs," lawyers themselves, "have

abandoned [those claims]," *Louis v. N.Y.C. Hous. Auth.*, 152 F. Supp. 3d 143, 156 (S.D.N.Y.

2016).  Accordingly, Plaintiffs' claim under the ACAA, all claims against Defendant State of

New York, and Plaintiffs R.C. and E.D.'s constitutional claims against KLSD are dismissed.

Further, to the extent any claim seeks relief regarding 14 C.F.R. § 382.117 or seeks an order that

the Federal Defendants must cease enforcing a regulation, those claims are dismissed.

### B.    Standing

Article III of the Constitution limits a federal court's jurisdiction to actual "Cases" and

"Controversies."  U.S. Const. art. III § 2, cl. 1; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555,

559 (1992).  "Constitutional standing is the threshold question in every federal case, determining

the power of the court to entertain the suit."  *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184

(2d Cir. 2001) (internal quotation marks omitted).  There are three constitutional standing requirements that every plaintiff must satisfy to invoke the jurisdiction of the federal courts:  "(1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."  *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (alterations and internal quotation marks omitted).  "'Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.'"  *Coal. of Watershed Towns v. U.S. EPA*, 552 F.3d 216, 218 (2d Cir. 2008) (per curiam) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

### 1. Federal Defendants

Plaintiffs' claims against the Federal Defendants all boil down to the claim that Jane's rights are violated by the Federal regulations requiring that the use of service dogs be allowed, but they do not have standing to bring this challenge.[5]  "Where . . . a litigant complaining of procedural or substantive injury is not the regulated party, the litigant must demonstrate that favorable action by the agency is likely to result in favorable action by the regulated party in addition to demonstrating a link between the procedural or substantive injury to the litigant and the adverse agency action."  *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 229 (2d Cir. 2012).  Where, even after a favorable ruling for the plaintiff, the regulated entities "would remain entirely free" to continue engaging in the complained-of behavior, and where a plaintiff

---

[5] The Federal Defendants have not challenged Plaintiffs' standing except as described on page 11, but because standing implicates the Court's subject matter jurisdiction over this action, I consider it on my own motion.  *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 U.S. 240, 250 (2d Cir. 2008).

puts forward "no allegation or assertion that the [entities] regulated by the [agency] would act differently were the [regulations] vacated," that plaintiff does not have standing to challenge agency action. *Id.*

Here, Plaintiffs are not the regulated party; airports, airlines, public entities, and places of public accommodation that must allow service animals on or in their premises are. Therefore, Plaintiffs "must demonstrate that favorable action by the agency is likely to result in favorable action by the regulated party." *Id.* Plaintiffs have not pleaded a single fact to suggest that, absent the challenged regulations, airplanes, schools, and other public and commercial entities would likely prohibit service animals. Rather, they merely allege that airlines and hotels have explained that they are required to allow dogs on their premises due to federal regulations, but that does not equate to an allegation that, absent the regulations, the regulated entities would exclude service animals. The closest Plaintiffs come to making such an allegation is that "Plaintiffs . . . did not encounter dogs in Jane's school, on aircraft or in airport facilities, or in places of public accommodation or commercial facilities prior to the passage of the statutes and regulations cited [in the FAC] which mandate that dogs be allowed in such places." (FAC ¶ 110.) Assuming, as I must, that this allegation is true, it still fails to plausibly assert that if the Court struck down those regulations, the regulated entities could not thereafter still permit service dogs, or even that they likely would retrogress to the discrimination against disabled people accompanied by service dogs that prompted the adoption of the regulations in the first place beginning decades ago. *See* H.R. Rep. No. 101-485, pt. 2, at 22, 106 (1990) (explaining "[t]he purpose of the ADA is to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities," and identifying the exclusion of service dogs as discrimination because "[r]efusal to admit [a service] dog . . . is tantamount to refusing to

admit the person who is in need of the dog.").  Because Plaintiffs have not shown a likelihood

that the regulated parties would return to the *status quo ante* if the federal agency changed its

stance and because those parties would be free to continue to allow service dogs, *see Town of

Babylon*, 699 F.3d at 229, this Court lacks the ability to redress Plaintiffs' injuries, and therefore

Plaintiffs lack standing to challenge the Federal Defendants' regulations.

2.      State Defendants

Plaintiffs do not have standing to bring this action against the State Defendants for

similar reasons.  Where the relief a plaintiff seeks "does not forbid [parties] from taking the

actions of which Plaintiff complains," that relief is insufficient for Article III standing.  *St. Regis

Mohawk Tribe v. Cuomo*, No. 09-CV-896, 2013 WL 4054702, at *4 (N.D.N.Y. Aug. 12, 2013);

*see also Coal. of Watershed Towns*, 552 F.3d at 218 (plaintiff lacked standing where "there is no

basis for [the court] to conclude that [plaintiffs] would more likely than not be in any different

position than they are now" if they received a favorable ruling).  Further, to the extent Plaintiffs

sue the N.Y. State Attorney General in his capacity as enforcer of the challenged regulations, "a

citizen lacks standing to contest the policies of the prosecuting authority when he himself is

neither prosecuted nor threatened with prosecution."  *Linda R.S. v. Richard D.*, 410 U.S. 614,

619 (1973).

Plaintiffs are not the targets of the challenged state statutes, and they have failed to

plausibly allege that the entities actually affected by the State Defendants' laws would not be

free to continue to act in the same way or would act differently absent those laws.  Accordingly,

this Court cannot redress Plaintiffs' alleged injuries, even if it rules in Plaintiffs' favor, and

Plaintiffs therefore do not have standing to bring their claims against the State Defendants.

3.     KLSD

Defendant KLSD moves to dismiss Plaintiff R.C.'s and Plaintiff E.D.'s ADA and

Rehabilitation Act claims for lack of standing, arguing that, under those statutes, parents may not

bring claims derivative of injuries to their children.  (KLSD Mem. at 17-18.)  Courts in this

circuit and throughout the country, however, have found that parents have standing to bring

ADA and Rehabilitation Act claims on their own behalves when their disabled child was the one

directly injured because "a parent of a child with a disability has a particular and personal

interest in preventing discrimination against the child."  *A.M. ex rel. J.M. v. N.Y.C. Dep't of

Educ.*, 840 F. Supp. 2d 660, 675 (E.D.N.Y. 2012) (internal quotation marks omitted) (collecting

cases), *aff'd sub nom. Moody ex rel. J.M. v. NYC Dep't of Educ.*, 513 F. App'x 95 (2d Cir. 2013)

(summary order).  Therefore, this Court finds that R.C. and E.D. have standing to pursue their

claims against KLSD.

## C.     Rehabilitation Act and ADA Claims Against KLSD

To state a claim for discrimination under either the ADA or § 504 of the Rehabilitation

Act, a plaintiff must plausibly allege that (1) she was a "qualified individual with a disability;"

(2) she was "excluded from participation in a public entity's services, programs or activities or

was otherwise discriminated against by [the] public entity;" and (3) "such exclusion or

discrimination was due to [her] disability."  *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158

(2d Cir. 2016) (first alteration in original) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir.

2009)).[6]  The third element is satisfied if a plaintiff plausibly pleads that defendant failed to

---

[6] "As the standards for actions under . . . the ADA and the Rehabilitation Act are generally
equivalent, [courts in this Circuit] analyze such claims together."  *Dean v. Univ. at Buffalo Sch.
of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015); *see Rodriguez v. City of N.Y.*, 197
F.3d 611, 618 (2d Cir. 1999) (assessing ADA and Section 504 claims together); *Scruggs v.
Meriden Bd. of Educ.*, No. 03-CV-2224, 2007 WL 2318851, at *16 (D. Conn. Aug. 10, 2007)

"mak[e] reasonable accommodations to the known physical or mental limitations of an . . . individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  KLSD does not dispute Plaintiffs have satisfied the first two elements of the claim, but argues that Plaintiffs have failed to satisfy the third element because "the Amended Complaint is devoid of sufficient factual allegations that Jane was discriminated against or denied reasonable accommodations by reason of her disability."  (KLSD Mem. at 14).  "In the education context, the ADA and the Rehabilitation Act require a covered institution to offer reasonable accommodations for a student's known disability unless the accommodation would impose an 'undue hardship' on the operation of its program, or 'fundamentally alter the nature of the service, program, or activity.'"  *Marshall v. N.Y. State Pub. High Sch. Athletic Ass'n, Inc.*, 290 F. Supp. 3d 187, 199 (W.D.N.Y. 2017) (quoting *Dean*, 804 F.3d at 186-87) (internal citations omitted).  "'Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice.'"  *Id.* (quoting *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012)).

KLSD's operative § 504 plan to accommodate Jane's disability requires, among other things, that any service dog be kept 30 feet away from Jane.  (FAC ¶ 75.)  KLSD's two previous § 504 plans similarly required KLSD personnel to prevent contact between Jane and dogs.  (*See id.* ¶¶ 25, 32, 63.)  Plaintiffs allege that KLSD's original and revised plans are insufficient to reasonably accommodate Jane and, even if they were sufficient, that KLSD has violated its own plans.  Specifically, Plaintiffs allege KLSD twice violated the Rehabilitation Act and ADA since

---

(same).  The primary difference between the two statutes is that the Rehabilitation Act requires the plaintiff to plead that the defendant receives federal funding, and the ADA does not, but it is undisputed that KLSD receives such funding, so the two statutes are appropriately analyzed together here.

instituting its operative § 504 plan. First, on June 21, 2017, following her graduation ceremony, Jane "came upon a service dog" outside the school and had to avoid it during photographs and mingling. (*Id.* ¶ 72.) Second, on January 30, 2018, Jane performed at an orchestra concert, and a service dog was present, within 30 feet of her. (*Id.* ¶¶ 73-74, 77.) KLSD also allegedly violated its previous § 504 plans when service dogs were present at two of Jane's other orchestra concerts and on one occasion when the dog was allowed into the school in May 2016. (*Id.* ¶¶ 35-36, 45-46, 66.) Plaintiffs also allege that the middle school assistant principal, who was the administrator on duty for at least two incidents, ridiculed Jane's allergy in an email to the middle school principal. (*Id.* ¶¶ 33-34.) Plaintiffs do not, however, specify how close the dog was to Jane during either of the aforementioned orchestra concerts and do not allege that the she was even exposed to the dog, let alone that it was brought near her, during the May 2016 incident. Plaintiffs do explain that during one of the concerts, Jane was seated in the corner of the auditorium and was escorted out of the auditorium immediately after the concert ended. (*See id.* ¶ 46.) Plaintiffs made no other allegations that Jane ever encountered a dog on school premises or during school activities.

KLSD's plans afford Jane a reasonable accommodation under the ADA and Rehabilitation Act. KLSD was simply not free to ban all dogs from Jane's school, and she was not in any event entitled to "a perfect accommodation or the very accommodation most strongly preferred by" her. *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 95 (2d Cir. 2015). Further, as KLSD correctly points out, all of its plans adhere to the Civil Rights Division's guidance on complying with the ADA:

> Allergies and fear of dogs are not valid reasons for denying access or refusing service to people using service animals. When a person who is allergic to dog dander and a person who uses a service animal must spend time in the same room or facility, for example, in a school classroom . . ., they both should be

> accommodated by assigning them, if possible, to different locations within the room or different rooms in the facility.

U.S. Dep't of Justice, Civil Rights Div., *ADA Requirements: Service Animals* (July 12, 2011), https://www.ada.gov/service_animals_2010.htm.  It can hardly be said that a school district's plan failed to accommodate a student under the ADA (and the near-identical Rehabilitation Act) if it follows the Civil Right Division's guidance on how to comply with the ADA.  *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597-98 (1999) (because ADA directs DOJ to implement regulations under Title II, DOJ's "views warrant respect").  Thus, any challenge to whether the plans themselves are reasonable is dismissed.

The remaining inquiry is whether KLSD's alleged violations of the § 504 plans effectively denied Jane a benefit on the basis of her disability by failing to accommodate her.  Plaintiffs make only two specific allegations that KLSD violated its own § 504 plan with regard to the proximity between Jane and a service dog:  the February 23, 2015 concert where Jane was exposed to a service dog and the January 30, 2018 concert during which a dog was within 30 feet of Jane.  The other allegations vaguely reference that a dog was in the school without alleging Jane's presence, (*see* FAC ¶¶ 40-43, 66), that Plaintiffs chose to remove Jane from certain situations out of their own fear that KLSD would not enforce its § 504 plan (*see id.* ¶¶ 48-49, 64-66), and that Jane "came upon a service dog" *outside* of school after her graduation, (*id.* ¶ 71).[7]

---

[7] Plaintiffs allege that KLSD violated the § 504 plan by refusing "to restrict the movements of the service dog" at a June 1, 2015 concert.  (FAC ¶¶ 45-46.)  The plan, however, did not require KLSD to restrict a dog's movements; rather, it required KLSD to prevent contact between Jane and the dog, (*id.* ¶ 32), which, presumably could be done by restricting the movement of Jane, the dog, or both.  Plaintiffs do not allege that the dog came near Jane during the June 2015 concert, but do allege that KLSD placed Jane in the corner of an auditorium, near an exit, and escorted her out of the auditorium immediately after the concert ended, precluding her from mingling in the lobby afterward.  (*Id.* ¶ 46.)  Therefore, by Plaintiffs' account, KLSD did, in fact, comply with its § 504 plan in attempting to prevent contact between Jane and a dog.  While this accommodation was not ideal from Plaintiffs' point of view, it did avoid the harm.

While the allegations are sparse, Plaintiffs plead just enough facts to plausibly state claims under the ADA and the Rehabilitation Act. While public entities are not required to enact perfect accommodations for people with disabilities, the accommodations still must be "effective." *See, e.g.*, *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Drawing all inferences in Plaintiffs' favor, they have plausibly alleged that KLSD's § 504 plans were not effective due to four violations (the two concerts, the fundraiser, and the May 2016 incident). At this stage, the Court cannot conclude as a matter of law whether those errors equate to "a pattern of repeated conduct" (which would suffice to state a violation), but they do plausibly allege more than "an isolated incident" (which would not suffice). *Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269, 278 (S.D.N.Y. 2008); *see Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (plaintiff sufficiently pleaded ADA claim where she alleged "more than one or two isolated mistakes"). It may well be the case that discovery shows KLSD engaged in nothing more than "[i]solated acts of negligence," which "do not come within the ambit of discrimination against [persons with disabilities]," but at this stage, the Plaintiffs have met their pleading burden. *Foley v. City of Lafayette*, 359 F.3d 925, 930-31 (7th Cir. 2004); *see Vassenelli v. State Univ. of N.Y.*, No. 17-CV-82, 2018 WL 1406629, at *4 (N.D.N.Y. Mar. 19, 2018).

KLSD also argues, incorrectly, that Plaintiffs' claims must be dismissed for failure to plead discriminatory animus. (*See* KLSD Mem. at 14.) Plaintiffs' claims for injunctive relief "do not require a showing of discriminatory animus," *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 368 (S.D.N.Y. 2017) (citing *Davis v. Shah*, 821 F.3d 231, 260 n.19 (2d Cir. 2016)), and Plaintiffs' claims for monetary relief against a "non-state governmental entit[y]" like KLSD likewise do not require a showing of discriminatory animus. *Garcia v. S.U.N.Y. Health Scis. Ctr.*

*of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001). A plaintiff instead "must show that the defendant acted with 'deliberate indifference' to his rights under [the ADA and Rehabilitation Act]." *Congemi v. Sachem Sch. Dist.*, No. 11-CV-1561, 2017 WL 5508810, at *9 (E.D.N.Y. Jan. 19, 2017) (regarding money damages under the ADA); *see Garcia*, 280 F.3d at 115 (applying deliberate-indifference standard to Rehabilitation Act claims and ADA damages claims brought against non-state government entities).

Plaintiffs have sufficiently pleaded that KLDS acted with deliberate indifference. "[A] plaintiff demonstrates deliberate indifference . . . where an official with authority to address the alleged discrimination and to institute corrective measures on Plaintiff's behalf had actual knowledge of ongoing discrimination against Plaintiff but failed to respond adequately." *Gershanow v. County of Rockland*, No. 11-CV-8174, 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (internal quotation marks omitted). It is undisputed that KLSD had knowledge of and the authority to address the alleged discrimination, evidenced by KLSD's enactment of various § 504 plans and the informal and formal challenges Plaintiffs brought regarding those plans. As noted, Plaintiffs have plausibly pleaded, albeit barely, that KLSD's response was, while adequate on paper, inadequate in practice. And they have alleged that a KLSD administrator responsible in part for the plan did not take Jane's allergies seriously. Therefore, Plaintiffs have plausibly pleaded deliberate indifference.

KLSD's argument that Plaintiffs have failed to exhaust their administrative remedies, (KLSD Mem. at 16), is also denied. KLSD acknowledges that exhaustion is generally not required under the Rehabilitation Act, but argues that where, as here, Plaintiffs complain of being deprived of a "free and appropriate public education," exhaustion requirements are triggered. (KLSD Reply at 7-8.) But the Supreme Court's recent ruling in *Fry v. Napolean*

*Community Schools*, 137 S. Ct. 743 (2017), explains that Plaintiffs do *not* need to exhaust all administrative remedies because they could bring "essentially the same claim if the alleged conduct had occurred at a public facility that was not a school," *id.* at 56 (emphasis omitted), which means the allegation should not be considered a challenge to a free and appropriate public education, and exhaustion is not required.  Accordingly, KLSD's motion to dismiss Plaintiffs' ADA and Rehabilitation Act claims is denied.

###### D.    Constitutional Claims

Plaintiffs claim that the Federal and State Defendants have violated Plaintiffs' procedural and substantive due process rights and that all Defendants violated Plaintiffs' equal protection rights.  I disagree.  The constitutional claims against KLSD fail, as would the constitutional claims against the Federal and State Defendants if Plaintiffs had standing to bring them.

As a threshold matter, this Court must determine what standard of review to apply to the substantive due process and equal protection claims.  Plaintiffs argue that Defendants have infringed their fundamental rights to travel, to an education, to not be discriminated against on the basis of a disability, and to patronize public and commercial spaces, thus triggering heightened scrutiny, but their arguments fall flat.

To assert a fundamental right protected by substantive due process, a plaintiff must allege the right is "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks and citations omitted).  Further, a plaintiff must provide a "'careful description' of the asserted fundamental liberty interest." *Id.*  The latter requirement stems from courts' "reluctan[ce] to

breathe . . . further substantive content into the Due Process Clause." *Michael H. v. Gerald D.*, 491 U.S. 110, 122 (1989) (internal quotation marks omitted). Plaintiffs fail on both prongs.

Two of the rights that Plaintiffs claim were violated – the rights to an education and to not be discriminated against on the basis of a disability – are not recognized under the Constitution. *See Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) ("there is no fundamental right to public education"); *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014) ("freedom from discrimination on the basis of disability is not . . . [secured] by the Constitution"). Additionally, Plaintiffs did not and could not point to any precedent establishing the right to "patronize public and commercial spaces" as a protected fundamental right. Therefore, any regulation or statute that allegedly violates one of the aforementioned rights is subject to rational basis review. *Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009) ("[W]here, as here, a statute neither interferes with a fundamental right nor singles out a suspect classification, we will invalidate that statute on substantive due process grounds only when a plaintiff can demonstrate that there is no rational relationship between the legislation and a legitimate legislative purpose.") (internal quotation marks and alteration omitted).

While a right-to-travel claim may be recognized under the Constitution in certain circumstances, they are not present here. Plaintiffs argue that they "have been forced to refrain from and limit their out-of-state travel" because of the presence of service dogs, to which Jane is allergic, on airplanes and in hotels. (*See* FAC ¶ 113.) But the Supreme Court "has refused to recognize as fundamental formulations of a right at a high level of generality," *Bourdon v. Sessions*, No. 17-CV-80207, 2017 WL 5187833, at *6 (S.D. Fla. Nov. 9, 2017) (citing *Glucksberg*, 521 U.S. at 721 (1997)), insisting on a "careful description" to implement the

required "judicial self-restraint" when asked to "break new ground" in a substantive due process case, *Reno v. Flores*, 507 U.S. 292, 302 (1993) (internal quotation marks omitted). Plaintiffs' claim can best be described as asserting that the Constitution protects the right to travel free from exposure to allergens, but there is no precedent or deeply rooted right establishing such a protection. Nor can it be said that liberty and justice cannot exist without it. There are any number of conditions that might make particular forms of travel more difficult for some people than for others – such as motion sickness, fear of heights or fear of speeding eighteen-wheelers – but avoiding the inconvenience associated with finding alternate ways to travel does not rise to the level of a fundamental constitutional right. *See Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (no constitutional right to most convenient form of travel). Accordingly, Plaintiffs' "right-to-travel" claim does not trigger heightened scrutiny and is subject to rational basis review.

Plaintiffs' equal protection claims are also subject to rational basis review. "[I]f a law neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). As explained above, the challenged rules and legislation do not burden a fundamental right, and, under current jurisprudence, people with disabilities are not in a suspect class. *See Tennessee v. Lane*, 541 U.S. 509, 540 (2004) (Rehnquist, C.J., dissenting) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-68 (2001)).[8]

Under rational basis review, Plaintiffs must plausibly allege that the rules and laws enacted by the Federal and State Defendants were "not rationally related to a legitimate

---

[8] To the extent Plaintiffs bring a "class of one" claim, it is also subject to rational basis review. *Progressive Credit Union v. City of N.Y.*, 889 F.3d 40, 49 (2d Cir. 2018).

government interest." *Tanov v. INS*, 443 F.3d 195, 201 (2d Cir. 2006); *see Beatie v. City of N.Y.*, 123 F.3d 707, 711 (2d Cir. 1997) ("Legislative acts that do not interfere with fundamental rights or single out suspect classifications carry with them a strong presumption of constitutionality and must be upheld if rationally related to a legitimate state interest.") (internal quotation marks omitted). Courts are required to uphold the classification "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (quoting *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993)). Plaintiffs therefore carry a "heavy burden to negative every conceivable basis which might support the [Defendants'] polic[ies]." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (internal quotation marks omitted).

The Federal Defendants' and State Defendants' policies are aimed at dealing with and providing accommodations for people with disabilities, which the Supreme Court has recognized as a legitimate government interest. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985). The challenged regulations plainly advance the rational purpose of ensuring that those who require guide dogs or other service animals are permitted to use them. It may seem unfair that protecting people who need such assistance creates a problem for other people who are allergic, but the choice between those competing priorities is for the political branches to make. Even if "[D]efendants' means of attaining that end are not the most efficacious, wisest or fairest possible . . . that is not the standard by which they are to be judged by this Court." *Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149, 159 (W.D.N.Y. 2006) (collecting cases). It simply cannot be said that it is irrational to conclude that regulations are needed to protect the use of service animals. Indeed, it cannot be said to be irrational to conclude that the benefits of such regulations outweigh the cost in terms of allergies, given that most dog allergies are not

severe and can be managed.  But this Court "need not [even] consider whether [Defendants] might have employed more precise language or other classifications better to achieve its goal." *Spina v. Dep't of Homeland Sec.*, 470 F.3d 116, 131 (2d Cir. 2006) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 378 (1973) (under rational basis review, "[i]t is not a function of the courts to speculate as to whether the statute is unwise or whether the evils sought to be remedied could better have been regulated in some other manner")).  Plaintiffs' allegations that other equally or more effective service aides are available, (Opp. to Fed. Ds at 11-12), and that the regulations are attenuated from their stated goal, (*id.* at 13),[9] are conclusory, but even if they were not, that tighter regulations could be crafted does not render the present regulations irrational, *see Nguyen v. INS*, 533 U.S. 53, 77 (2001) (O'Connor, J., dissenting) ("The fact that other means are better suited to the achievement of governmental ends . . . is of no moment under rational basis review.").  Accordingly, Plaintiffs fail to plausibly state substantive due process claims against the Federal and State Defendants or equal protection claims against any Defendant, and those claims are dismissed.

---

[9] Plaintiffs imply, (Opp. to Fed. Ds at 13), that the use of service animals has gotten out of hand because the regulations forbid a place of public accommodation from requiring documentation and allow inquiry only into whether the animal is required for a disability and what work or tasks the animal performs, 28 C.F.R. § 35.136(f) ("A public entity shall not ask about the nature or extent of a person's disability . . . .  A public entity shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal."); *id.* § 36.302(c)(6) (same).  But the government could rationally conclude that the cost of some people taking advantage is outweighed by the benefit of ensuring those who truly need the animals are not harassed or embarrassed.  To whatever extent that the use of service animals has gotten out of hand, or the needs of allergic people have not been prioritized, the political branches must do the necessary balancing.  "[T]he possibility of better drafting or a more equitable balancing of competing interests does not invalidate a statute under rational basis review."  *Balentine v. Tremblay*, No. 11-CV-196, 2012 WL 1999859, at *12 (D. Vt. June 4, 2012) (citing *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (*per curiam*) (rational basis review does not authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines")).

Plaintiffs' procedural due process claims also must be dismissed. "It is fundamental that to establish a procedural due process violation, a plaintiff must show a deprivation of a protected life, liberty or property interest." *Bross v. Turnage*, 889 F.2d 1256, 1257 (2d Cir. 1989). The Federal and State Defendants both argue that Plaintiffs failed to establish any liberty or property interest that was sufficiently infringed to trigger procedural due process protections. (*See* Fed. Ds.' Mem. 20-22; State Ds.' Mem. 17-19.) Plaintiffs respond with conclusory allegations that they were deprived of the right to travel, the right to an education, and the right to be allowed in places of public accommodation and commercial facilities without process, but did not provide any support for the notion that those are recognized rights that entitle them to process. Indeed, this Court can find no examples of the right to travel or the right to be in public or commercial spaces triggering constitutionally required procedural due process.

This Court does recognize the "right to a public education protected by the Due Process Clause," and that when the government subjects a student to a "severe detriment or grievous loss [of that right]," at least some process is due. *Goss v. Lopez*, 419 U.S. 565, 575 (1975) (internal quotation marks omitted). The "property interest which is protected by the Due Process Clause," however, "is the right to participate in the *entire educational process*." *Kajoshaj v. City of N.Y.*, No. 11-CV-4780, 2013 WL 249408, at *4 (E.D.N.Y. Jan. 23, 2013) (emphasis added); *see Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 72 (W.D.N.Y. 1997) ("[I]t is only when a student is excluded from the entire educational process that due process must be afforded.")

Jane has not been deprived an opportunity to participate in the entire educational process. Rather, Plaintiffs have alleged a handful of incidents, including Jane's inability to take a specific music course and go on a field trip, (FAC ¶¶ 48-49, 64), which are beyond the purview of

constitutional protection. *Mazevski*, 950 F. Supp. at 72 ("[E]xclusion from a particular course, event or activity is of no constitutional import."). Therefore, Plaintiffs have failed to sufficiently plead a protected liberty interest, so even if they had standing, their procedural due process claims against the Federal and State Defendants[10] would be dismissed.[11]

### E. Additional Grounds for Dismissal as to the Federal Defendants

#### 1. ACAA and Rehabilitation Act Claims

Even assuming Plaintiffs had standing to bring their claims against the Federal Defendants, Plaintiffs' ACAA and Rehabilitation Act claims would have to be dismissed on grounds of sovereign immunity. "It is, of course, 'axiomatic' under the principle of sovereign immunity 'that the United States may not be sued without its consent,'" *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)), and thus, in a suit against the United States, "a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction," *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir. 1999) (*per curiam*). A waiver of sovereign immunity must be "'unequivocally expressed'" in the statutory text. *County of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (quoting *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999)).

---

[10] Because Plaintiffs' claims against the State Defendants are dismissed for lack of standing and failure to state a claim, I need not reach the State Defendants' motion to dismiss Plaintiffs' claims against the New York Attorney General on the ground of sovereign immunity. That said, a state officer is amenable to suit under *Ex Parte Young* only if "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," (Opp. to State Ds at 4 (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)), and because Plaintiffs' have failed to allege any ongoing violation of constitutional law, the State Defendants would be protected by sovereign immunity against Plaintiffs' constitutional claims.

[11] Plaintiffs have also failed to explain what process would have been due had a protected interest been involved.

As the Federal Defendants point out, and Plaintiffs do not refute, the ACAA does not create a private right of action, *Lopez v. Jet Blue Airways*, 662 F.3d 593, 597 (2d Cir. 2011), let alone waive sovereign immunity and authorize would-be plaintiffs to sue the federal government, *see* 49 U.S.C. § 41705. Therefore, sovereign immunity protects the Federal Defendants against Plaintiffs' claim arising under ACAA.

Section 504 of the Rehabilitation Act provides that no individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). "While Section 504(a)'s substantive nondiscrimination standard applies broadly to any program or activity conducted by any Executive agency, Section 505(a)(2) of the Rehabilitation Act expressly provides for private actions to enforce Section 504 only against any recipient of Federal assistance or Federal provider of such assistance." *Pereira v. U.S. Dep't of Justice*, No. 16-CV-2599, 2016 WL 2745850, at *18 (S.D.N.Y. May 11, 2016) (citation and internal quotation marks omitted). Under that framework, the Supreme Court has held that Congress waived the federal government's sovereign immunity under the Rehabilitation Act with regard to suits for money damages only where a federal agency is acting as a "Federal provider[] of financial assistance." *Lane v. Pena*, 518 U.S. 187, 193 (1996) (internal quotation marks omitted).

Although neither the Supreme Court nor the Second Circuit has spoken directly on the issue of whether the federal government has waived sovereign immunity for claims seeking declaratory or injunctive relief, "[other] appellate and district courts have almost universally concluded that Section 504 of the Rehabilitation Act does not imply any private right of action,

regardless of the relief sought, to challenge a federal agency's *non-funding* activities, given the limiting language of Section 505(a)(2)." *Pereira*, 2016 WL 2745850, at *19 (emphasis in original) (collecting cases).[12] Thus, regardless of whether Plaintiffs seek monetary damages or injunctive relief, the issue to be resolved is whether the Federal Defendants were acting as federal providers of financial assistance.

Here, Plaintiffs seemingly argue that the Federal Defendants – at least the Department of Justice ("DOJ") and U.S. Attorney General – should be considered federal providers of financial assistance with regard to *any* claim arising from the Rehabilitation Act. (*See* Opp. to Fed. Ds ("Pursuant to [Executive Order 12250], the [DOJ and the U.S. Attorney General] are charged with the coordination, implementation and enforcement by the executive agencies of the nondiscrimination provisions of federal law, including § 504 . . . . Under this authority, [the DOJ and the U.S. Attorney General] have the authority to enforce noncompliance with the nondiscrimination provisions of § 504 . . . through the imposition of sanctions and the withholding of federal funds.").) I disagree.

First, nothing in the Executive Order cited by Plaintiffs discusses the DOJ's or the U.S. Attorney General's role as a provider of funding. Second, Plaintiffs do not allege that the Federal Defendants engaged in any specific funding activities relevant to this case – to the contrary, all its activities are regulatory – and the general assertion that the federal government has the authority to impose sanctions and withhold federal funds is insufficient. *See Lane*, 518 U.S. at 194-95. Third, Plaintiffs' argument would render sovereign immunity waived any time

---

[12] This Court has reviewed the cases Plaintiffs cite for the proposition that the Supreme Court allows suits for injunctive relief regardless of whether the U.S. government is engaged in funding activities, and, while most of them do not support that proposition, those that do are non-binding, out-of-circuit opinions that are not as persuasive as *Pereira*.

the DOJ or the U.S. Attorney General were sued under the Rehabilitation Act, which is inconsistent with the "established practice of construing waivers of sovereign immunity narrowly in favor of the sovereign," and with Supreme Court precedent clearly limiting the waiver of sovereign immunity contained in the Rehabilitation Act. *Id.* at 195. Therefore, the Federal Defendants cannot be considered "Federal providers of financial assistance," and they are entitled to sovereign immunity against Plaintiffs' Rehabilitation Act claims.

Further, Plaintiff's Rehabilitation Act must be dismissed because, as a matter of statutory construction, the Rehabilitation Act does not provide for a private right of action against the United States when it acts in its capacity as a regulator. *Kinneary v. City of N.Y.*, 358 F. Supp. 2d 356, 359-60 (S.D.N.Y. 2005); *see Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 607 (1st Cir. 1989) (*en banc*)( no indication Congress intended Rehabilitation Act to "give rise to a right of action against the government as a regulator"). Plaintiffs argue that applying *Kinneary* here "would contradict the conclusions reached by the US Supreme Court in *Lane v. Pena*," (Opp. to Fed. Ds at 6), but they do not (and could not) cite to anything in *Lane* to support that proposition. *Lane* does not address whether the Rehabilitation Act provides a private right of action against the federal government when acting as a regulator. Plaintiffs' Rehabilitation Act claim against the Federal Defendants would thus be dismissed even if sovereign immunity or lack of standing did not bar their claims.

### 2. Claims under the APA

The Federal Defendants argue that Plaintiff's APA claim is untimely, and, even if it were timely, it fails to state a claim. (Fed. Ds.' Mem. 12-14, 24-25.)

Challenges to agency action pursuant to the APA can come in two forms: procedural or substantive. Any procedural challenge must come within six years of the promulgation of the

regulation.  *Wong v. Doar*, 571 F.3d 247, 263 (2d Cir. 2009).  "If, however, a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger."  *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991); *see Rodriguez v. United States*, 852 F.3d 67, 82 (1st Cir. 2017).  Plaintiffs seemingly concede that their APA claim would be barred if their challenge was a procedural one, and they instead argue that the six-year statute of limitations does not begin to run on their "substantive challenge" until "the application of the regulation to the challenger."  (Opp. to Fed. Ds. at 4.)

Plaintiffs fail to plausibly allege that the Federal Defendants applied the regulations to Plaintiffs themselves at any point, as Plaintiffs are not the regulated entities.  To the extent that the Federal Defendants took enforcement action after the initial promulgation of the regulations, which Plaintiffs do not plead, such action would have been taken against the regulated entities, not Plaintiffs themselves.  Therefore, the exception to the six-year statute of limitations does not apply, and the claim is time-barred because each regulation was promulgated more than six years ago.[13]

Plaintiffs suggest that the statute of limitations did not begin to run until the challenged regulation *affected* Jane.  (Opp. to Fed. Ds at 4-5.)  All but one of the cases they cite, however, involved plaintiffs who were regulated parties and do not suggest that third parties who are

---

[13] Even though 28 C.F.R. § 36.302 was amended in 2016 to add subsection (g), that subsection – allowing public entities to forgo providing reasonable modifications to an individual who is only "regarded as" having a disability – is not at issue in this litigation.  The majority of the regulation as it stands today, including all of the challenged portions, was promulgated in 2011.  75 Fed. Reg. 56,236, 56,251-53 (Sept. 15, 2010).

indirectly impacted by a regulation may avoid the six-year statute of limitations.[14]  But even

assuming they could, the FAC's claim under the APA would be dismissed because it is wholly

conclusory.  And even if were not, the regulations would survive APA review for the same

reasons they survive rational basis review.  *See Cooper Hosp. / Univ. Med. Ctr. v. Burwell*, 179

F. Supp. 3d 31, 47 (D.D.C. 2016) (challenge to agency action under APA is analyzed under same

standard as rational basis equal protection claim), *aff'd sub nom. Cooper Hosp. Univ. Med. Ctr.*

*v. Price*, 688 F. App'x 11 (D.C. Cir. 2017) (*per curiam*).

### F.      Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to

amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to

amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*

*v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, (Doc. 49), after having the benefit of pre-motion

letters from all Defendants, (Docs. 24, 29, 46), as well as the Court's observations during a pre-

motion conference, (Minute Entry dated January 26, 2018).  In general, a plaintiff's failure to fix

deficiencies in the previous pleading, after being provided notice of them, is alone sufficient

---

[14] In *Natural Resources Defense Council, Inc. v. Evans*, 232 F. Supp. 2d 1003 (N.D. Cal. 2002), the court did not address whether injury to third-party plaintiffs could start the statute of limitations anew because some plaintiffs filed within the six-year state of limitations, and thus "even if certain plaintiffs [we]re time-barred . . ., the remainder of the plaintiffs [we]re not," *id.* at 1024.

ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnotes, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Plaintiffs were largely on notice of the deficiencies with their original complaint and have failed to rectify them in the FAC. Further, Plaintiffs have not asked to amend or suggested that they are in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop*, 642 F.3d at 369 (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see*

*also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

\* \* \*

The Court sympathizes with Jane and her family, and understands why they would find it unfair that government regulations accommodating one sort of disability increase the risk to persons with another sort of disability. But the balancing required by the provisions they challenge does not have be perfect, only rational. The competing priorities are for the executive and legislative branches to determine. It may be that those branches will be receptive to arguments that the regulatory scheme should be adjusted, but this Court does not believe that it can say that such action is required. Thus, the remaining question in the case is whether, given the existence of these regulations, the school district acted reasonably in executing its efforts to accommodate.

## IV.    CONCLUSION

For the foregoing reasons, the Federal Defendants' and State Defendants' motions to dismiss are GRANTED, and KLSD's motion to dismiss is GRANTED in part and DENIED in part. The remaining claims are the ADA and Rehabilitation Act claims against KLSD. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 55, 59, 66).

Plaintiffs and KLSD are ordered to appear for a status conference on January 4, 2019, at 3:30

p.m.

**SO ORDERED.**

Dated:  December 4, 2018
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.